Argued 23 January, decided 26 February, rehearing denied 16 July, 1907.

## STATE *v.* KELLIHER.

### 88 Pac. 867.

INDICTMENT—MOTION TO QUASH—ENDORSING NAMES OF WITNESSES.

1. Though Section 1284, B. & C. Comp., defining when a grand jury ought to find an ind'ctment, is applicable to the filing of an information by a district attorney, and he is in duty bound to endorse on the information the name of every witness whose testimony has been considered, a failure to observe these requirements cannot be taken advantage of by a motion to quash, the penalty for omitting the names of witnesses be'ng inab'lity to call them on the trial. Nor will a motion to quash lie on any other grounds than those prescribed by Section 1349, B. & C. Comp.: *State* v. *Whitney*, 7 Or. 386, followed, and *State* v. *Justus*, 11 Or. 178, doubted.

INSTRUMENT IN NAME OF FICTITIOUS PERSON AS FORGERY.

2. An instrument executed in the name of a fictitious person purporting to assign all the right, title and interest of the grantor in and to certain public land described in a certificate of sale theretofore issued by the State Land Board to such fictitious person is a "deed" within the meaning of Section 1858, B. & C. Comp., which provides a punishment for any person who shall falsely make, forge or counterfeit any deed.

CRIMINAL LAW—EVIDENCE OF OTHER LIKE OFFENSES.

3. Where evidence of an accomplice as to the commission by him of other simi'ar acts about the same time is admitted for the purpose of showing guilty knowledge and intent in the defendant, there must be other testimony connecting defendant with such acts or the evidence should be withdrawn by the court.

CORROBORATING TESTIMONY OF ACCOMPLICE.

4. This case affords an example of the rule established in Oregon by Section 1406, B. & C. Comp., that a conviction cannot be had on the uncorroborated testimony of an accomplice.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE EAKIN.

Appellant, A. T. Kelliher, is accused by an information jointly with H. H. Turner, with the forgery of a certain instrument in writing, viz., a deed, by signing the name of G. I. Rice to an assignment to this appellant ·of a certificate of sale of ·school lands, issued by the State Land Board to G. I. Rice, such assignment being executed and acknowledged in the same manner as a deed to real estate. This appellant was tried alone, and, upon conviction, brings this appeal. The instrument alleged to have been forged is in the following language, viz.:

"Know all men by these presents:

That I, G. I. Rice, to whom the annexed certificate of sale No. 13,015 was executed by the State Land Board of the State of Oregon, for the following described land, situated in Morrow County, State of Oregon, to wit: The E. ½ of section 36, township 5 S., range 26 E. of the W. M., containing 320 acres, have, for a valuable consideration, to me in hand paid by Alfred T. Kelliher, hereby assign and transfer to said Alfred T. Kelliher all my right, title, interest and claim of, in and to the said described land, and I hereby authorize the said State Land Board to execute a deed to Alfred T. Kelliher for said described land.

Witness my hand and seal this 19th day of August, A. D. 1902.

Signed, sealed and delivered          .   '      G. I. Rice. [Seal.]
    in presence of:
        T. N. Denham,
        H. H. Turner.

State of Oregon, County of Marion—ss.:

. This certifies that on this 19th day of August, A., D. 1902, before me, the undersigned, a notary public in and for said county and state, personally appeared the within named G. I. Rice, who is known to me to be the identical person described in, and who executed the within instrument, and acknowledged to me that he executed the same freely and voluntarily for the uses therein mentioned. In testimony whereof, I have hereunto set my hand and seal the day and year last above written.

    [Notarial Seal.]                                        H. H. Turner,
                                 Notary Public for Oregon."

The name of O. West only is inserted at the foot of the information as a witness examined before the district attorney. At the trial the information was dismissed as to H. H. Turner that he might be used by the state as a witness. In the year 1900, this appellant made arrangements with Turner to procure for him persons to sign applications for the purchase of school lands from the State of Oregon, and to procure from such applicants, assignments to the appellant of the certificate issued by the State Land Board for the lands so applied for. Under this arrangement, Turner, on August 16, 1902, produced the G. I. Rice application and the assignment of the certificate of sale to

be issued thereon. G. I. Rice was the name of a fictitious person, and the name was signed by Turner to the application for the purchase and to the assignment to the appellant of the certificate of sale; both being signed on the same day, but the assignment was dated August 19, 1902. Turner testified also that in August and September, 1902, he procured for appellant about 30 other applications for the purchase of school land, and assignments of the certificates of sale to be issued therefor; the signatures to which were also names of fictitious persons, and the name of the applicant was signed by him to the application and to the assignment in each case. There was no evidence except Turner's of any of these 30 applications, including the G. I. Rice application, having ever been in the hands of the appellant; but the certificates when issued were all turned over to the appellant, and he furnished to the clerk of the state land board the money to cover the first payment on the applications, and all the applications were procured by Turner for appellant's benefit, and appellant furnished Turner the descriptions of the lands to be placed in the applications.    REVERSED.

For appellant there was a brief over the names of *Edward Byers Watson, George Greenwood Bingham* and *P. H. D'Arcy,* with oral arguments by *Mr. Watson* and *Mr. Bingham.*

For the State there was a brief with oral arguments by *Mr. John H. McNary.* District Attorney, and *Mr. Charles Linza McNary.*

MR. JUSTICE EAKIN delivered the opinion of the court.

Appellant filed a motion to quash the information for the reasons, in substance: (1) That the names of the witnesses examined by the district attorney are not indorsed on the information; (2) that the information is based on evidence of other witnesses than the one indorsed thereon; (3) that West, whose name is indorsed, had no knowledge of the facts upon which the information is based; and (4) that there was no legal evidence before the district attorney to sustain the charge, and the motion was based wholly upon matter disclosed by affidavits.

1. Section 1284, B. & C. Comp., provides:

"The grand jury ought to find an indictment when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury."

This section applies equally to the district attorney in finding an information, and neither the grand jury nor the district attorney has any authority to find a true bill unless the evidence before them or him is sufficient in their judgment to warrant a conviction, and the name of every witness whose evidence was considered in investigating the charge must be inserted at the foot of, or indorsed on, the information: B. & C. Comp. § 1262. Mr. Justice WOLVERTON, in *State* v. *Warren,* 41 Or. 348, 356 (69 Pac. 679), referring to this Section 1262, says: "This statute was enacted for a purpose, and that was evidently to afford the accused an opportunity of ascertaining the names of the witnesses with whom he would probably be confronted at the trial. * * Such statutes are mandatory in character, and should be observed to the letter by the executive officers of the law."

But it does not follow that the defendant in a criminal case can, by motion to quash, require the district attorney or the grand jury to disclose what evidence was before him or them. Nor can its sufficiency be questioned by motion and affidavit. It does not appear in this case that there were any witnesses examined by the district attorney relating to this charge, whose names are not indorsed on the information. If, at the trial, it appears that others were examined, and their names were not so indorsed, then by Section 1262, they cannot be heard against the defendant at the trial. And whether the evidence of O. West and the records before the district attorney were sufficient to justify the finding of the information is not a matter that can be tried out by the court on affidavit. Otherwise every case by indictment or information could be brought before the court by motion, and the district attorney or the grand jury, respectively, required to disclose all the evidence before them and the court determine whether it was sufficient. In *State* v. *Grady,* 84 Mo. 220, 223, the court holds that of the sufficiency of the

evidence the grand jury are the judges. "If it were otherwise, it would result that the court would become the tribunal to indict." Section 1349, B. & C. Comp., provides:

"The indictment must be set aside by the court, upon the motion of the defendant, in either of the following cases: (1) When it is not found, indorsed, and presented as prescribed in Chapter VII of Title XVIII of this code; (2) when the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment or indorsed thereon."

The ground of the motion relied on here does not come within the provisions of this section; and in *State* v. *Whitney,* 7 Or. 386, it was held that these are the only two cases for which an indictment can be set aside. Although, in *State* v. *Justus,* 11 Or. 178 (8 Pac. 337: 50 Am. Rep. 470), it is intimated, though not decided, that irregularities in proceedings before grand juries, not covered by Chapter VII, may, under some circumstances, be taken advantage of by motion to quash. However, even if the motion will lie to quash an indictment for irregularities in the proceedings before the grand jury or the district attorney, not prescribed by Chapter VII, still such motion cannot be permitted to question the sufficiency of the evidence to justify the indictment, and the motion was properly denied.

2. The appellant demurred to the information, for the reason that the facts stated did not constitute a crime, viz., that the forged instrument is not a deed within the meaning of Section 1858 of the code. This section provides:

"If any person shall, with intent to injure or defraud any one, falsely make, alter, forge or counterfeit * * any contract, charter, letters patent, deed, lease, * * writing obligatory, * * such person, upon conviction thereof, shall be punished," etc.

By Section 3306 of the code it is provided that when the State Land Board accepts an application to purchase school land, "the State Land Board shall * * deliver to the purchaser a certificate that he has purchased the lands therein described."

This amounts to a sale of the land, but the title remains in the state until the balance of the price is paid, and the certifi-

49 OR.—— 6

cate transfers an equity in the land to the purchaser; and. it would seem from the decision of *Gliem* v. *Board of Commissioners,* 16 Or. 479 (19 Pac. 16), that the purchaser or his assignee can compel the board to convey it to him if he has complied with all the requirements of the law; and Section 3309 of the code recognizes the purchaser's right to transfer his interest in the land by assignment of the certificate, but provides that such assignment shall be executed and acknowledged in the same manner as a deed to real estate.

The operative words of this forged instrument are:

"Have * * hereby assigned and transferred * * all my right, title, interest and claim."

In *Lambert* v. *Smith,* 9 Or. 185, 193, LORD, C. J., says: "The word, then, 'convey,' or 'transfer,' in a deed, is of equivalent signification and effect as 'grant.'" In *Field* v. *Columbert,* 4 Sawy. 527 (Fed. Cas. No. 4,764), FIELD, J., says: "Any words in a deed indicating an intention to transfer the estate, interest or claims of the grantor, will be a sufficient conveyance, whether they be such as were generally used in a deed of feoffment, or of bargain and sale, or of release, irrespective of the fact of possession."

Our statute designates no form in which a conveyance shall be made, except that it shall be made by deed, and the only question, then, is whether there was in this case any land or any estate or interest therein upon which the deed might operate, and, as we have seen that the certificate of sale is evidence of an interest in the land, although not of the legal title, it establishes an equitable interest. Notwithstanding the certificate is issued to a fictitious person, and the forgery is the forgery of the name of the fictitious purchaser, it is, nevertheless, forgery if done with fraudulent intent, and the instrument is capable of effecting a fraud. Mr. Justice BEAN, in *State* v. *Wheeler,* 20 Or. 192, 195 (25 Pac. 394: 10 L. R. A. 779: 23 Am. St. Rep. 119), a case of forgery by the use of the name of a fictitious person, says: "From the definitions of forgery, as above stated, as well as from the statute, it will be seen that the essen-

tial elements of the crime are: (1) a false making of some instrument in writing; (2) a fraudulent intent; (3) an instrument apparently capable of effecting a fraud." This instrument, in connection with the fictitious application of G. I. Rice, and the certificate of sale issued thereon, was being resorted to as a means of evading the law in procuring the title to school lands from the state, and thus intended as a fraud upon the state, and it is equally clear that it is an instrument capable of effecting a fraud upon the state, as, the forgery not being discovered, the title would eventually pass to the assignee of the certificate. Therefore we conclude that the assignment of the certificate of sale alleged in the information to be a forgery is a deed within the meaning of Section 1858, and the demurrer was properly overruled.

3. In the trial of the case the state offered and the court admitted in evidence testimony that Turner forged about 30 other applications for the purchase of school land from the state and assignments of the certificates to be issued therefor, all of which applications were for lands the descriptions of which were furnished by the appellant, and the certificates when issued, with the assignments, were turned over to the appellant as in other cases. There was no evidence that the appellant forged any of these applications or assignments or was present when it was done. Nor any evidence that the appellant was a party thereto, or knew that they were forgeries, other than such inferences as were relied on to establish appellant's knowledge of the forgery of the Rice assignment; but the scienter of appellant is lacking in each of the substantive forgeries as in the principal case. The purpose of this evidence was to show guilty knowledge on the part of the appellant of the forgery of the Rice assignment, as tending to corroborate Turner as to appellant's connection with it, and the rule is that when the question of scienter, intent or identity is an essential ingredient of the crime on trial, and such knowledge is denied by the defendant, or mistake or accident claimed, proof of other like acts, even though they establish an independent crime, may be shown as tending to show guilty

knowledge or intent: *Farris* v. *People,* 129 Ill. 521 (21 N. E. 821: 4 L. R. A. 582: 16 Am. St. Rep. 283) ; *Commonwealth* v. *Ferrigan,* 44 Pa. 386; *People* v. *Seaman,* 107 Mich. 348 (65 N. W. 203: 61 Am. St. Rep. 326) ; *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892). And in this case, there being no direct evidence connecting the appellant with the forgery, evidence of other forgeries by Turner, without evidence tending to establish appellant's knowledge of or connection therewith, is not evidence of appellant's knowledge of or connection with the forgery of the Rice assignment. Upon offering another forged. paper on the trial of a forgery case, it was held that, "not only must it be shown to have been forged, but the prisoner must be shown to have had questionable connection with it" : *State* v. *Lowry,* 42 W. Va. 205 (24 S. E. 561) ; *People* v. *Bird,* 124 Cal. 32 (56 Pac. 639) ; *People* v. *Whiteman,* 114 Cal. 338 (46 Pac. 99). In *People* v. *Bird,* it is said: "If proof had been forthcoming to show the connection of defendant with these other checks which were said to have been forged, still such coincidence is not admissible to prove the *corpus delicti,* but only, after that has been established, to show guilty intent. And the prosecution assumed the same burden of proof as to each of the checks introduced to show guilty knowledge as in regard to the check for which he is being tried." And to the same effect is the case of *People* v. *Seaman,* 157 Mich. 348 (61 Am. St. Rep. 326: 65 N. W. 203), which contains an extended review of the cases on this subject. And there being no evidence other than the uncorroborated statements of Turner, an accomplice, that appellant was a party to the substantive forgeries, it was error to submit them to the jury.

4. It is claimed by counsel for the appellant that, Turner being an accomplice in the commission of the offense, conviction cannot be had on his testimony alone under Section 1406 of the code, and that there was no sufficient corroboration to connect the defendant with the commission of the crime; and the district attorney claims that sufficient corroboration is found in the fact that this application and assignment, as well as all the

others offered in evidence, were for the appellant's benefit and were in his possession, and that it was one of many acts in pursuance of a common design to defraud the state.  There is no evidence but Turner's statements that appellant knew, or had any reason to believe, that the Rice application and assignment were forged, and Turner does not claim that it was ever mentioned between them, except in the remark made by appellant to "sign them yourself," when appellant was objecting to an application to which the applicant had made his mark, which might reasonably be held to refer to cases in which the applicant could not write.  In the conversation at the post office in June, 1900, Turner claimed that he declined to go further with the work; "that it looked like perjury was being committed," but this referred only to actual purchasers swearing to applications, and not to fictitious applicants, and it is not claimed that any names of fictitious persons had been used at that time.  It may be there was corroborating evidence that the appellant was a party to a common design to defraud the state by procuring persons to make applications to purchase land for the benefit of the appellant, but this is not the crime with which he is charged, and does not tend to connect the appellant with the forgery or to corroborate Turner as to appellant's part in the forgery.  Where the common design of the appellant and Turner was to procure persons to sign applications to purchase school land for appellant's benefit, and this is the only common design disclosed, receiving the benefits of such acts by the appellant with knowledge of their character, does not tend to show that appellant was accepting the benefits of applications made in the names of fictitious persons with knowledge of that fact, or to show a common design to commit forgeries.  The testimony as to the other forgeries and the forged applications offered in evidence were only competent to prove the scienter of the appellant as to the forgery of the Rice application and assignment, that being a point upon which Turner must be corroborated, as an element tending to show appellant's connection with the forgeries; but, as we have already seen, there was no proof of scienter in those

cases, and without that, multiplying them could not add that element: *State* v. *Fitchette,* 88 Minn. 145 (92 N. W. 527); *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892).

Turner, the accomplice, not being corroborated by other evidence tending to connect the appellant with the commission of the crime, or the circumstances of its commission, the evidence was insufficient to sustain the verdict, and the case is reversed and remanded to the court below for such further proceeding as may seem proper, not inconsistent with this opinion.

REVERSED.

Mr. Justice Moore took no part in this decision.